# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| Darrion O. Foote (#N-61595), | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No. 13 C 50349 |
| | ) | |
| v. | ) | |
| | ) | Judge Frederick J. Kapala |
| Mark Lolli, et al., | ) | |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darrion O. Foote, an Illinois prisoner, brought this action *pro se* under 42 U.S.C. § 1983 arising out of events that occurred while he was incarcerated at Winnebago County Jail. Foote alleges that on May 10, 2012, he had a physical encounter with jail guards that resulted in injury to his left bicep, lower back, ribs, and face. Foote named Winnebago County, Winnebago County Sheriff Richard A. Meyers, nine correctional officers (collectively, the "County Defendants"), and the Jail's Clinic Site Manager as defendants to this action. According to Foote, correctional officers used excessive force while removing him from his cell, escorting him to segregation, and placing him in a segregation cell. The correctional officers also allegedly ignored Foote's requests for medical attention following the incident. Before the court is the County Defendants' motion for summary judgment. For the reasons discussed below, the court grants the motion.

## I. BACKGROUND

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. Local

Rule 56.1(b)(3) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C) permits the party opposing summary judgment to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment."

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of material facts. *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (quotation marks omitted). In the case of any disagreement, the opposing party must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (quotation marks omitted). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. *See, e.g.*, *Graziano v. Vill. of Oak Park,* 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Substantial compliance is not enough; parties must strictly comply with the rule. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (noting that "even *pro se* litigants must follow rules of civil procedure").

Consistent with the Local Rules, the County Defendants filed a statement of uncontested material facts along with their motion for summary judgment. (*See* Defs.' Stmt. of Fact, Dkt. No.

85-1 ("DSOF").) Each relevant substantive assertion of fact in the Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, the County Defendants filed and served on Foote a Local Rule 56.2 Notice, explaining in detail the requirements of Local Rule 56.1. (*See* Dkt. No. 85-8.)

In response, Foote filed six documents: Plaintiff's opposition to County Defendants' motion for summary judgment (Dkt. No. 99 ("Pl.'s Opp. to MSJ")); Plaintiff's supplemental response to County Defendants' motion for summary judgment (Dkt. No. 129); Plaintiff's memorandum in support of his supplemental response to County Defendants' motion for summary judgment (Dkt. No. 130 ("Pl.'s Resp. to MSJ")); Aff. of Pl. (Dkt. No. 131); Plaintiff's response to County Defendants' statement of material facts (Dkt. No. 132 ("Pl.'s Resp. to DSOF")); and Plaintiff's statement of disputed material facts (Dkt. No. 133). Foote, however, did not file an additional statement of facts as allowed by Local Rule 56.1(b)(3)(C).

This is not Foote's first suit in this court or his first summary judgment motion. *See, e.g.*, *Foote v. Winnebago County Jail*, No. 02 C 50390 (N.D. Ill.); *Foote v. Houi*, No. 03 C 50001 (N.D. Ill.); *Foote v. Meyers*, No. 11 C 50321 (N.D. Ill.). It also is not the first time Foote failed to file a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Foote v. Winnebago County Jail*, No. 02 C 50390 (N.D. Ill.). Foote therefore is aware of the consequences of not properly responding to a motion for summary judgment.

With the above factors in mind, the court turns to the facts of this case.

### B. Facts

Foote alleges in the operative complaint that on May 10, 2012, he had a physical encounter with correctional officers at Winnebago County Jail while being moved from his cell in the general

3

population to a segregation cell. (Dkt. No. 59, Pl. 1st Am. Compl. at 5-9 ("Compl.").) During the encounter, defendant correctional officers Lolli, Meath, Hall, Stacy, Jacobson, Wroble, and Wagner, "converg[ed]" on Foote's cell. (Compl. at 5.) Lolli and Meath yelled for Foote to come to the door and "cuff up." (Compl. at 5-6.) When Foote failed to comply, Lolli, Meath, and Hall entered the cell. (Compl. at 6-7.) Hall then grabbed Foote by the neck and forced him head first onto the concrete floor. (Compl. at 7.) After applying handcuffs, Hall pulled Foote to his feet and "ram[med]" him into a wall. (Compl. at 7.) Stacy was present with his K-9 partner Duke, and occasionally "utter[ed] commands" to Duke in an effort to scare Foote. (Compl. at 7.) The officers then escorted Foote to a segregation cell, all the while "taunt[ing]" and "threaten[ing]" him. (Compl. at 8.)

In segregation, Hall directed Foote "into an empty cell and [ ] slammed him face down onto a concrete bunk." (Compl. at 8.) Hall then "perch[ed] himself on top of" Foote's back and kneed Foote "repeatedly in his left bicep area." (Compl. at 9.) Wroble grabbed hold of Foote's legs "using the figure four technique," and Pohlman—who had just arrived on the scene—grabbed Foote's hands, causing the handcuffs to tighten. (Compl. at 9.) The officers left Foote face down on a steel bunk where Foote "felt disoriented and vomited." (Compl. at 11.) According to Foote, Lolli, Meath, Hall, Stacy, Jacobson, Wroble, Wagner, and Pohlman—when not participating directly in the events—did not intervene to stop the assault. (Compl. at 9.) Foote says he suffered obvious injuries, including "abrasions, bruising & or extreme pain to his left bicep and lower back, extremities, ribs, and face" as a result of the correctional officers' conduct. (Compl. at 10.)[1]

---

[1]The parties did not include these introductory facts in their Local Rule 56.1 statements, but they are included here to provide some background to this litigation. The facts were taken directly from Foote's

Foote contends that correctional officers were aware of his injuries and his need for medical care. Specifically, Foote says that Defendants Lolli, Meath, Hall, Jacobson, Wroble, Pohlman, Stacy, and Wagner knew he was injured and needed immediate medical attention because they were present when Foote was assaulted and heard him cry out in pain and request medical attention. (DSOF ¶ 7A.) Foote also says that Defendant Martinez—who was not present at the time of the assault—was aware of his need for medical care because Foote told Martinez that he wanted to see a nurse because his back was hurting. (DSOF ¶¶ 7B, 7C, 7D.) Martinez did not observe anything about Foote's appearance that led him to believe Foote was injured or in need of medical care. (DSOF ¶¶ 7E, 7F.) Nevertheless, Martinez contacted a nurse and advised her that Foote had requested medical attention. (DSOF ¶ 7E.)

Foote did not submit a written grievance concerning his claims against the County Defendants. (DSOF ¶¶ 11-14.) The Winnebago County Corrections Bureau has a formal grievance procedure for inmates. (DSOF ¶ 10; *see* Dkt. No. 89, Winnebago County Sheriff's Dep't Gen. Order No. 5-630.12 ("Gen. Order").) An inmate must first attempt to resolve his grievance, in person or in writing, with the "Corrections Bureau personnel whose area of responsibility is related to the grievance." (DSOF ¶ 10A; Gen. Order ¶ D.) If the grievance is not resolved to the inmate's satisfaction, the inmate may file a written grievance or appeal to the Shift Lieutenant. (DSOF ¶ 10B; Gen. Order ¶ E.) If the inmate still is not satisfied with the resolution of his grievance, he can file a written grievance appeal with the Jail Superintendent within seven days of receipt of the written notice of the resolution of the grievance. (DSOF ¶ 10C; Gen. Order ¶ F.4.) Written grievances must be specific in their description of the complaint.

---

first amended complaint and therefore are merely allegations. The court makes no finding as to whether they are disputed or undisputed facts, nor is that determination material to the outcome of this order.

(DSOF ¶ 10D; Gen. Order ¶ B.) At the time of Foote's encounter with the correctional officers on May 10, 2012, the Winnebago County Corrections Bureau required that written grievances be submitted electronically, via kiosks located in the inmate's respective pod. (DSOF ¶ 10E.) Foote did not file a written grievance complaining that he was physically assaulted by correctional officers on May 10, 2012 (DSOF ¶ 11), that correctional officers failed to intervene to protect him from being physical assaulted on May 10, 2012 (DSOF ¶ 12), or that correctional officers were deliberately indifferent to his medical needs on May 10, 2012 (DSOF ¶ 14).

Foote subsequently brought this lawsuit under 42 U.S.C. § 1983, alleging that on May 10, 2012, Defendants Lolli, Meath, Hall, Jacobson, Wroble, Pohlman, Stacy, and Wagner used excessive force against him or failed to intervene in the use of force. (Compl. at 19-21.) Foote also alleged that Defendants Lolli, Meath, Hall, Jacobson, Wroble, Pohlman, Stacy, Wagner, and Martinez were deliberately indifferent to his need for treatment of the resulting injuries. (Compl. at 21-22.) In addition, Foote asserted state-law claims of battery and intentional infliction of emotional distress against the individual defendants and claims against the County and Sheriff Meyers for indemnification and on a theory of respondeat superior liability. (Compl. at 22-24).

The County Defendants now move for summary judgment.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no

genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (alteration and quotation marks omitted). That is, to survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [he] relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

The court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The court considers the facts in a light most favorable to the non-movant. *Id.* Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *See Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012); *see also Anderson*, 477 U.S. at 256-57.

The County Defendants move for summary judgment on three grounds. First, the County Defendants argue that Foote failed to exhaust administrative remedies with respect to his federal claims. Second, the County Defendants argue that Foote's alleged injuries do not rise to the level of an objectively serious medical condition and thus cannot support a claim of deliberate indifference. Third, the County Defendants argue that Foote's claim of intentional infliction of emotional distress should be dismissed on the merits. Because it is dispositive, the court only needs to address the first argument.

The Prison Litigation Reform Act requires the exhaustion of "administrative remedies as are available." 42 U.S.C. § 1997e(a). An inmate must use "all steps that the agency holds out," and he must "do[] so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (quotation marks omitted). "The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance." *Pavey v. Conley*, 663 F.3d 899, 905 (7th Cir. 2011). The burden of proof is on the defendant to demonstrate the prisoner failed to exhaust his administrative remedies. *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

Evidence submitted by the County Defendants shows that Foote did not exhaust the administrative remedies available to him because he did not pursue his complaints concerning the correctional officers' use of force, failure to intervene, or deliberate indifference through the steps established by the Winnebago County Corrections Bureau for resolution of inmate complaints. In particular, it is undisputed that Foote never submitted a written grievance concerning his claims against the County Defendants. (DSOF ¶¶ 11-14; *see* Pl.'s Resp. to MSJ at 2 ("Plaintiff did not file a written grievance concerning any of the claims herein.").) Thus, the County Defendants have established that Foote did not exhaust all administrative remedies available to him before filing suit in this court.

Foote tries to avoid this result by arguing that the County Defendants waived their right to assert an exhaustion defense because they did not include it as an affirmative defense in their responsive pleading. (Dkt. No. 99, Pl.'s Opp. to MSJ at 2-3.) While it is true that failure to exhaust administrative remedies is an affirmative defense and the County Defendants did not raise the defense in their answer to Foote's first amended complaint, non-exhaustion may be properly

8

asserted in a motion for summary judgment so long as the plaintiff is not harmed by the delay. *See Garofalo v. Vill. of Hazel Crest*, 754 F.3d 428, 436 (7th Cir. 2014). Foote contends that allowing the County Defendants to assert an exhaustion defense at this stage of the litigation "would present a myriad of logistical difficulties" because he is no longer incarcerated at Winnebago County Jail. (Pl.'s Resp. to MSJ at 3.) Foote, however, was transferred from the Jail to state custody nearly 18 months before the County Defendants filed their responsive pleading. (*See* Dkt. No. 89, Dec. 22, 2014 Aff. of Andrea Tack ("Tack Aff.") ¶ 7 (stating that Foote was transferred from Winnebago County Jail to the Illinois Department of Corrections on Dec. 13, 2012); Dkt. No. 60, County Defs.' Answer to 1st Am. Compl.) Thus, any harm arising from the "logistical difficulties" identified by Foote cannot be attributed to the County Defendants' assertion of an exhaustion defense at summary judgment rather than in their answer. Foote also cannot establish prejudicial harm arising from the alleged financial hardship of continued litigation. If Foote continues to pursue his claims against the County Defendants, he chooses to incur additional expense; that is not the type of financial burden with which the court is concerned in its assessment of harm. The court therefore finds that consideration of the County Defendants' exhaustion defense is proper at this time, especially in light of the fact that exhaustion is a threshold matter and should be addressed before proceeding to any disposition on the merits. *See Roberts v. Neal*, 745 F.3d 232, 234 (7th Cir. 2014).

Foote next argues that the grievance process at the Winnebago Jail allows inmates to seek an "informal resolution" to their complaints and that he chose this remedy by directly addressing his grievances concerning the May 10, 2012 incident with Jail Superintendent Tack and, because he was "reasonably satisfied" with the resolution of his complaints, he was not required to file a

9

written grievance. (Pl.'s Resp. to MSJ at 2.) Foote, however, identified no evidence supporting his contention that inmate grievances could be resolved by speaking directly with the Jail Superintendent without first submitting a written grievance. Instead, evidence cited by Foote establishes that inmates at Winnebago County Jail must first attempt to resolve their complaints, in writing or in person, through the "appropriate corrections personnel whose area of responsibility is related to the grievance." (Tack Aff. ¶ 5) And while there is no evidence in the record identifying the "appropriate corrections personnel" to whom Foote was required to address his first level grievance, record evidence establishes that grievances submitted to the Jail Superintendent must be in writing. (*See* Tack Aff. ¶ 5; DSOF ¶ 10C; Gen. Order ¶ F.4; *see also* Tack Aff. ¶¶ 8-11 (showing that Tack responds to written grievances).) Foote presented no evidence to the contrary.[2]

Foote also argues that he did not have access to a kiosk and therefore the only remedy available to him was speaking directly with Superintendent Tack. (Pl.'s Resp. to MSJ at 3.) But Foote's argument that he did not have access to a kiosk is belied by the fact that he electronically submitted four "requests" concerning general matters during the thirty days immediately following the May 10, 2012 incident. (*See* Ex. B to Tack Aff. at pp. 8-9, electronic grievances

---

[2]Foote also cites to a document that he says is the section of the inmate handbook concerning grievance procedures. Although the document is not properly before the court as an additional fact, Foote referred to the document in contesting the County Defendants' statements of fact concerning the Jail's requirement that inmates submit a written grievance to resolve their complaints. (*See* Pl.'s Resp. to DSOF ¶¶ 10A-10C.) According to Foote, the handbook allows inmates to resolve their complaints without submitting a written grievance. While this is true, the document identified by Foote is not very different from Winnebago County Sheriff's Department General Order Number 5-630.12 insofar as the handbook advises that inmates must first bring their complaints to "correctional staff"—not jail officials—and that "correctional staff" must attempt to resolve the complaint. If "correctional staff" are unable to resolve the complaint, the inmate must file a written grievance, which may be appealed to the Jail Superintendent. (*See* Dkt. No. 131 at p. 9, Lolli—1530.) The handbook does not provide that inmates may seek informal resolution of their complaints by verbally complaining directly to the Jail Superintendent.

submitted by Foote from April 30, 2012 to June 21, 2012.) He also electronically submitted no fewer than eight medical grievances during the same time period. (*See* Dkt. No. 81-3 at pp. 7, 9-15, Winnebago County Jail Resident Grievance Reports.)

Moreover, the facts relied on by Foote to support his contention that he spoke directly with Superintendent Tack—as well as the content of the alleged conversations—are not properly before the court because Foote did not include them in a separate statement of additional facts as required by Local Rule 56.1(b)(3)(C). Foote instead attempts to add those facts through his response to the County Defendants' statement of facts (*see* Pl.'s Resp. to DSOF ¶¶ 11-14) and by citation to his affidavit in his response brief (*see* Pl.'s Resp. to MSJ at 2-3).

In particular, Foote states in response to the County Defendants' assertion that he did not file a written grievance related to his claims that correctional officers physically assaulted him on May 10, 2012, failed to intervene in the assault, and then denied him medical attention for the resulting injuries (DSOF ¶¶ 11, 12, 14):

> IMMATERIAL: Plaintiff asserts that he directly addressed his grievances stemming from the May 10, 2012 incident with the County Defendants herein, with the jail superintendent Andrea Tack on May 11, 2012 and was satisfied with the resolution thereof and as such was not required to file a written grievance relating to his claim that 1) he was physically assaulted by corrections officers, 2) corrections officers failed to intervene to protect him from being physically assaulted by corrections officers . . . and 4) corrections officers were deliberately indifferent to his medical needs, pursuant to grievance procedures outlined in the Inmate Handbook and averred to by Jail Superintendent Andrea Tack. | See Affidavit of Plaintiff together with the document attached thereto marked as Lolli—1530 and Affidavit of Andrea Tack at par. #5, together with the documents attached thereto. |

(Pl.'s Resp. to DSOF ¶ 11.) Foote's response, however, does not refute the fact that he did not file a written grievance concerning the correctional officers' conduct on May 10, 2012; a proper response would have been "undisputed." (*See* Pl.'s Resp. to MSJ at 2 ("Plaintiff did not file a

11

written grievance concerning any of the claims herein."). Instead, Foote argues that he was not required to file a written grievance and sets forth facts supporting what alternative steps he allegedly took to resolve his complaint. These are additional facts unrelated to whether Foote submitted a *written* grievance and thus should have been presented in a separate statement of additional fact. Because they were not, the court need not consider them here. *See Ciomber v. Cooperative Plus, Inc.*, 527 F.3d 635, 643 (7th Cir. 2008) (affirming district court's refusal to consider portions of plaintiff's response that were argumentative and also simultaneously denied the veracity of defendant's proposed fact and attempted to present additional facts); *De v. City of Chi.*, 912 F. Supp. 2d 709, 715 (N.D. Ill. 2012) ("It is improper, and a violation of Local Rule 56.1, for the nonmoving party to add additional facts to his Local Rule 56.1(b)(3)(B) response . . . ."). A party also may not cite to facts in its brief that have not been presented in its statement of facts. *See Summers v. Electro-Motive Diesel, Inc.*, No. 13 C 1312, 2015 WL 2385798, at *1 (N.D. Ill. May 19, 2015). Consequently, the court may (and has) disregard facts concerning Foote's alleged conversations with Superintendent Tack about the correctional officers' use of force and subsequent denial of medical care on May 10, 2012. *See, e.g.*, *Thornton v. M7 Aerospace LP*, ___ F.3d ___, 2015 WL 4652790, at *10 (7th Cir. Aug. 6, 2015) (affirming district court's decision to disregard non-movant's additional facts because required statement of facts was not filed); *Bordelon v. Chi. Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000) (explaining that "the district court is entitled to limit its analysis of the facts on summary judgment to evidence that is properly identified and supported in the parties' statements" and that "it does not matter that evidence may have existed in the record to create a disputed issue of fact" if the parties' statements are not in compliance with the local rules).

Because evidence properly before the court shows that Foote failed to exhaust his administrative remedies concerning his claims against the County Defendants, Foote's federal claims against the County Defendants are dismissed. The court declines to address the County Defendants' arguments regarding the merits of Foote's claims because the Seventh Circuit has held that the issue of exhaustion is a threshold matter and should be addressed before proceeding to any disposition on the merits. *See Roberts*, 745 F.3d at 234 (holding that exhaustion is a threshold issue); *Pavey*, 544 F.3d at 741-42.

The dismissal of Foote's federal claims is without prejudice, as this court does not rule on whether a state court would apply an exhaustion requirement similar to that of 42 U.S.C. § 1997e(a). *See Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004) (holding that "*all* dismissals under § 1997e(a) should be without prejudice"). As such, the court's ruling does not preclude Foote from pursuing any relief that may be available to him in state court. But by operation of 42 U.S.C. § 1997e(a), Foote has no further recourse in federal court at this time. The dismissal therefore constitutes a final appealable order. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (explaining that order dismissing section 1983 claim for failure to exhaust administrative remedies is appealable where there are no further remedies that plaintiff can pursue); *Barnes v. Briley*, 420 F.3d 673, 676-77 (7th Cir. 2005) (same).

The court also dismisses Foote's state-law claims against the County Defendants without prejudice to Foote pursing the claims before an appropriate tribunal. The decision to exercise supplemental jurisdiction is within the district court's broad discretion, but "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli*

*Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see Howlett v. Hack*, __ F.3d __, 2015 WL 4433218, at *5 (7th Cir. July 21, 2015) (explaining that district court should relinquish jurisdiction over state-law claims when they have not been the focus of litigation). Accordingly, Foote's state-law claims are dismissed.

### III. CONCLUSION

For the foregoing reasons, the County Defendants' motion for summary judgment [85] is granted. All claims against the County Defendants are dismissed without prejudice. The claims against the Jail's Clinic Site Manager will be addressed in a separate order.

If Plaintiff wishes to appeal this order, he may file a notice of appeal in this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). The court advises Plaintiff that, if he chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, Plaintiff may accumulate a strike under 28 U.S.C. § 1915(g).

Date: August 31, 2015