# IN THE UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Darrion O. Foote (#N-61595), | ) |
| *Plaintiff*, | ) Case No. 13 C 50349 |
| v. | ) |
| | ) Judge Frederick J. Kapala |
| Mark Lolli, et al., | ) |
| *Defendants*. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Darrion O. Foote, an Illinois prisoner, brought this action *pro se* under 42 U.S.C. § 1983, arising out of events that occurred while he was incarcerated at Winnebago County Jail. Foote alleges that on May 10, 2012, he had a physical encounter with jail guards that resulted in injury to his left bicep, lower back, ribs, and face. Foote's injuries allegedly were not promptly treated and his complaints concerning the lack of treatment allegedly were ignored, resulting in permanent deformity and persistent pain in his left bicep. Foote named Winnebago County, the Winnebago County Sheriff, and nine correctional officers as defendants to this action. Foote also named as a defendant Valerie Lewis, who was employed as the Jail's Clinic Site Manager at all times relevant to Foote's complaint. According to Foote, Lewis was responsible for addressing all of Foote's medical requests and ignored his requests for medical attention to his injured bicep from May 10, 2012 to June 28, 2012. Before the court is defendant Lewis' motion for summary judgment. For the reasons discussed below, the court grants the motion.

## I. BACKGROUND

### A. Northern District of Illinois Local Rule 56.1

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Local Rule 56.1(a)(3) requires the moving party to provide "a statement

of material facts as to which the moving party contends there is no genuine issue" for trial. Local Rule 56.1(b)(3) provides that "[a]ll material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party." Local Rule 56.1(b)(3)(C) permits the party opposing summary judgment to submit "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment."

To defeat summary judgment, the opposing party "must file a response to each numbered paragraph in the moving party's statement" of material facts. *Schrott v. Bristol–Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005) (quotation marks omitted). In the case of any disagreement, the opposing party must include "specific references to the affidavits, parts of the record, and other supporting materials relied upon." *Id.* (quotation marks omitted). "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. *See, e.g.*, *Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Substantial compliance is not enough; parties must strictly comply with the rule. *Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). A plaintiff's *pro se* status does not excuse him from complying with Local Rule 56.1. *See Greer v. Bd. of Educ. of City of Chi.*, 267 F.3d 723, 727 (7th Cir. 2001); *see also Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) (noting that "even *pro se* litigants must follow rules of civil procedure").

Consistent with the Local Rules, defendant Lewis filed a statement of uncontested material

facts along with her motion for summary judgment. (*See* Def.'s Stmt. of Fact, Dkt. No. 81 ("DSOF").) Each relevant substantive assertion of fact in the Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, Lewis filed and served on Foote a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. (*See* Dkt. No. 83.)

In response, Foote filed a six-page document titled, "Plaintiff's Opposition to Defendant Lewis' Fed. R. Civ. P. 56 Motion for Summary Judgment." (*See* Dkt. No. 98 ("Pl.'s Resp.").) Foote argues in his opposition that Lewis' motion should be denied under Federal Rule of Civil Procedure 56(d) because Foote allegedly was unable to obtain "specific facts essential to the crux of his opposition" (Pl.'s Resp. at 1), and he identifies nine pieces or categories of evidence that, he contends, are necessary to properly respond to Lewis' motion (Pl.'s Resp. at 2-3). Foote did not otherwise respond to Lewis' Local Rule 56.1(a)(3) statement of material facts or submit his own statement of additional facts.

This is not Foote's first suit in this court or his first summary judgment motion. *See, e.g.*, *Foote v. Winnebago County Jail*, No. 02 C 50390 (N.D. Ill.); *Foote v. Houi*, No. 03 C 50001 (N.D. Ill.); *Foote v. Meyers*, No. 11 C 50321 (N.D. Ill.). It also is not the first time Foote failed to file either a Local Rule 56.1(b)(3)(B) response to a defendant's statement of facts or a Local Rule 56.1(b)(3)(C) statement of additional facts. *See Foote v. Winnebago County Jail*, No. 02 C 50390 (N.D. Ill.). Thus, Foote is aware of the consequences of not properly responding to a motion for summary judgment. Lewis' facts therefore are admitted. *See* N.D. Ill. L.R. 56. 1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted

3

unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012); *Parra v. Neal*, 614 F.3d 635, 636 (7th Cir. 2010).

Moreover, Foote's reliance on Rule 56(d) by itself is insufficient to defeat summary judgment. A party seeking additional discovery to oppose summary judgment must file a separate motion under Federal Rule of Civil Procedure 56(d), supported by an affidavit or declaration, "explaining why he could not yet present evidence essential to his opposition." *Simmons v. McCulloch*, 546 F. App'x 579, 583 (7th Cir. 2013). Here, Foote neither filed a Rule 56(d) motion seeking discovery of the items identified in opposition to Lewis' motion for summary judgment nor does Foote request additional time to pursue discovery of those items. Instead, Foote now contends that summary judgment should be denied because he is unable to obtain evidence that he never requested.

Discovery in this case closed on October 31, 2014, and defendants filed motions for summary judgment on December 22, 2014. (*See* Dkt. Nos. 79, 85.) Foote subsequently filed a motion to compel discovery from defendant Lewis that, Foote argued, he needed to oppose summary judgment. (*See* Dkt. No. 92.) The magistrate judge deferred briefing on Lewis' motion for summary judgment to allow Foote the opportunity to obtain additional evidence. (*See* Dkt. Nos. 76, 100.) Foote deposed Lewis but did not request discovery of any of the items he now contends he needs to oppose summary judgment. (*See* Dkt. No. 92.) Foote then moved to amend his response to Lewis' motion for summary judgment to "reflect the negative impact that this court's order allowing him to take the telephonic deposition of defendant Lewis has had on his inability to adduce the facts necessary to oppose Lewis' motion for summary judgment," (Dkt. No. 113 at p. 2), but again did not seek additional discovery. Instead, and despite an opportunity to

4

conduct additional discovery before briefing on summary judgment concluded, Foote represented to the magistrate judge that he intended to stand on his opposition. (*See* Dkt. Nos. 100, 115.)

A review of the list of items identified by Foote as necessary to oppose summary judgment show that many of the items—*e.g.,* statements from inmate-witnesses, surveillance tapes, depositions or statements from the medical personnel who treated Foote—may have been available to Foote had he pursued them, but he did not. Foote also offered no explanation, except for the fact of his incarceration, for his failure to request the items before briefing on summary judgment commenced or during the time briefing on summary judgment was deferred to allow him to obtain additional evidence with which to oppose summary judgment. Foote therefore has not demonstrated that the court should postpone ruling on Lewis' motion for summary judgment.

With the above factors in mind, the court turns to the facts of this case.

### B. Facts

Foote alleges in the operative complaint that on May 10, 2012, he had a physical encounter with correctional officers. (Pl.'s 1st Am. Compl. at 5-9, Dkt. No. 59 ("Compl.").) During the encounter, the officers allegedly punched or kicked Foote on his legs, back, sides, and torso while Foote was handcuffed behind his back. (Compl. at 9-10.) Officers also allegedly "perched" on Foote's back and kneed him in his left bicep. (Compl. at 9.) As a result, Foote allegedly suffered "abrasions, bruising, & or extreme pain to his left bicep and lower back, extremities ribs, and face and presently suffers lingering pain, and injury to his left bicep and back." (Compl. at 10.) Although Foote allegedly told the officers that he was injured and requested medical assistance, Foote was not seen by medical personnel that day. (*See* Compl. at 10-12.)

On May 11, 2012, Foote allegedly "was approached by" Winnebago County Jail

Superintendent Andrea Tack concerning the preceding day's events. (Compl. at 12.) Foote showed Tack his injuries, including the injury to his left bicep. (Compl. at 12.) Tack assured Foote that he would be seen by medical personnel. (Compl. at 12.) That same day, Foote was visited by a nurse who viewed Foote's injuries and told Foote that he would be issued an ice pack and pain medication. (Compl. at 12.) The nurse also allegedly told Foote that his chart would be presented to the "medical supervisor, Defendant Lewis." (Compl. at 12.)

According to Foote, Lewis was "solely responsible for addressing all" of his "medical requests, inquiries, complaints, and grievances." (Compl. at 13.) On May 14, 2014, Foote allegedly "communicated" to Lewis that he needed medical attention and showed her the injury to his left bicep. (Compl. at 12.) Lewis allegedly responded, "I'm aware of the incident and your complaints however since you were previously seen by nursing staff this matter has been addressed." (Compl. at 12.) Lewis then allegedly ignored Foote's subsequent requests for medical attention and refused to schedule Foote to meet with a doctor. (Compl. at 13.) As a result, Foote contends, his injuries remained untreated from May 10, 2012 to June 28, 2012 (Compl. at 13), resulting in permanent deformity and lingering pain in his left bicep (Compl. at 16).

Evidence submitted by Lewis and unopposed by Foote for purposes of Lewis' motion for summary judgment shows a different course of events. Lewis has been employed as the Clinic Site Manager at the Winnebago County Jail since May 2008. (Dkt. No. 81-9, Dec. 18, 2014 Affidavit of Valerie Lewis ("Lewis Aff.") ¶ 5.) As the Clinic Site Manager, Lewis is responsible for scheduling and coordinating the daily operations of the medical department for inmates; managing and scheduling the jail's medical staff; assisting with the cost management of staffing,

pharmaceuticals and supplies; and assisting in creating and implementing departmental policies and procedures. (Lewis Aff. ¶ 6.) Lewis' duties and responsibilities do not include determining whether an inmate receives medical attention, care, or treatment. (Lewis Aff. ¶ 7.)[1]

Lewis does not recall speaking with Foote about the injuries he allegedly suffered on May 10, 2012, nor does she recall observing Foote's alleged injuries on May 14, 2012 (DSOF ¶ 32), and Foote's medical records contain no documentation of Foote's alleged encounter with Lewis (*see generally* Ex. B to DOSF, Dkt. Nos. 81-2 through 81-8). Instead, Foote's medical records show that he was examined by Nurse Zimmerman on May 11, 2012. (DSOF ¶ 24.) Zimmerman examined Foote's left bicep and noted good range of motion, that the skin was warm and dry, and no ill effects. (DSOF ¶ 24.) Foote was offered Naproxen to relieve his pain, but he refused. (DSOF ¶ 25.) Foote was then prescribed Tylenol, an ice pack, and monitoring. (DSOF ¶ 25.) On May 12 and 13, 2012, Foote refused Naproxen. (DSOF ¶¶ 26, 27.) On May 14, 2012, Zimmerman saw Foote for a second time. (DSOF ¶¶ 28-30.) Foote complained of pain in his arm at that time (DSOF ¶ 29) but refused Naproxen (DSOF ¶ 28). Zimmerman examined Foote's left arm and noted no ill effects (DSOF ¶ 29) but advised Foote to submit a sick call slip (DSOF ¶ 30). Foote did not submit a sick call clip on May 14, 2012. (DSOF ¶ 31.)

Lewis' first interaction with Foote concerning the injury to his left bicep occurred on May 17, 2012. On May 17, 2012, Foote submitted a medical grievance, explaining that he was experiencing pain and bruising in his left bicep as a result of a week-old injury. (Dkt. No. 81-3, Ex. B to DSOF at p. 40, Grievance # 10090, Medical Grievance dated 05/17/2012; *see* DSOF ¶¶ 35, 36.) Foote stated that he was given Tylenol and an ice pack, but nothing more had been done

---

[1] The court notes that Lewis failed to include these introductory facts in her Local Rule 56.1 statement of uncontested material facts, but the facts were included in her affidavit and are necessary to provide some background as to Lewis' role in this case. The court therefore includes the facts here.

to address his injuries. (Dkt. No. 81-3, Ex. B to DSOF at p. 40, Grievance # 10090, Medical Grievance dated 05/17/2012.) He requested to be seen by a doctor but also explained that, if there was a fee associated with treatment, he did not want to be seen. (Dkt. No. 81-3, Ex. B to DSOF at p. 40, Grievance # 10090, Medical Grievance dated 05/17/2012; *see* DSOF ¶ 35.) Lewis received Foote's grievance and responded within five hours, "You are scheduled in clinic today. If you need to be seen, please come down to be evaluated." (DSOF ¶ 36; Dkt. No. 81-3, Ex. B to DSOF at p. 40, Grievance # 10090, Medical Grievance dated 05/17/2012.) There is no record that Foote visited the medical clinic on May 17, 2012. (DSOF ¶ 37.)

More than one month later, Foote submitted a second and third grievance concerning the injury to his left bicep. On June 21, 2012, Foote submitted a medical grievance in which he explained that, he believed, Superintendent Tack spoke to Lewis and arranged for medical treatment of Foote's left bicep and requested "wether [sic] or not that took place as my arm is and has been bothering me." (DSOF ¶ 40; Dkt. No. 81-3, Ex. B to DSOF at p. 26, Grievance # 24503, Medical Grievance dated 06/21/2012.) Lewis received Foote's grievance and responded approximately three hours later, "Would you like a nurse or a provider to assess you? I will schedule you according to your request." (DSOF ¶ 41; Dkt. No. 81-3, Ex. B to DSOF at p. 26, Grievance # 24503, Medical Grievance dated 06/21/2012.) The next day, Foote submitted another medical grievance in which he reiterated his request concerning Superintendent Tack but did not specifically request treatment:

> WHAT PART OF MY INQUIRY CONCERNING DIRECTOR TACK DIDN'T YOU UNDERSTAND??DIRECTOR TACK SPOKE WITH ME ON 6.20.12 IN REGARDS TO MY LET BICEP INJURY WHICH WAS CAUSED BY AN OFFICER . . . SHE WAS HAVE TO SPOKEN WITH MEDICAL IN REGARDS TO HAVING ME SEEN BY A DOCTOR . . I SIMPLY ASKED YOU DID THAT MET TAKE PLACE . . YOU HAVE BEEN DENYING ME ACCESS O

8

> MEDICAL SINCE I INCURRED THIS INJURY AS I HAVE ALSO SPOKEN WITH YOU FACE TO FACE CONCERNING IT . . . . ITS AS IF YOU ARE ATTEMPTING TO DEFLECT ATTENTION AWAY ROM MY INJURY IN AN ATTEMPT TO PROTECTTHE C.O.S. . . AGAIN DID DIRECTOR TACK SPEAK WITHYOU IN REGARDS TO ME BEING SEEN AT MEDICAL . . . THIS WAS WRITTEN IN ENGLISH I KNOW N OTHER LANUAGE . . .

(DSOF ¶ 42; Dkt. No. 81-2, Ex. B to DSOF at p. 23, Grievance # 24789, Medical Grievance dated 06/22/2012 ([sic] throughout).) Lewis responded within two hours, "You are scheduled for a clinic visit." (DSOF ¶ 43; Dkt. No. 81-2, Ex. B to DSOF at p. 23, Grievance # 24789, Medical Grievance dated 06/22/2012.) The record contains no other communications between Foote and Lewis between May 10, 2012 and June 28, 2012, regarding the injury to Foote's left bicep. (*See generally* Ex. B to DSOF, Dkt. Nos. 81-2 through 81-8.)

On June 28, 2012, Foote was seen by Dr. Kenton Lee. (DSOF ¶ 44.) Dr. Lee noted a firm swelling of Foote's antecubital fossa[2] but that Foote's motor function was intact; it is unclear whether Lee observed a bruise on Foote's arm. (DSOF ¶ 44; *see* Dkt. No. 81-5, Ex. B. to DSOF at pp. 76.) Dr. Lee ordered an ultrasound to rule out a mass. (DSOF ¶ 44.) On further consultation between Dr. Lee and other medical personnel, it was decided that an MRI would be more appropriate (DSOF ¶¶ 47-48), and an MRI of Foote's left forearm was scheduled for July 16, 2012, at SwedishAmerican Hospital (DSOF ¶ 49). Medical personnel were unable to perform the MRI on July 16, 2012, due to a bullet in Foote's back, but took an x-ray instead. (DSOF ¶ 50.)

On July 31, 2012, Foote submitted a medical grievance asking whether the medical provider he met with on June 28, 2012, had prescribed a muscle relaxer. (DSOF ¶ 51; Dkt. No. 81-2, Ex. B to DSOF at p. 14, Grievance # 39385, Medical Grievance dated 07/31/2012.) Foote also complained that his arm was still painful, asked whether he would "need to request to be seen

---

[2]The antecubital fossa is the "elbow pit" or depression at the bend of the elbow. *See* Wikipedia, Cubital Fossa, at http://en.wikipedia.org/wiki/Cubital_fossa (last visited Aug. 10, 2015).

again and would my return to healthcare be considered follow up care," and asked about his x-ray results. (DSOF ¶ 51; Dkt. No. 81-2, Ex. B to DSOF at p. 14, Grievance # 39385, Medical Grievance dated 07/31/2012.) Lewis received the grievance and responded the next day, "The provider did not want to give you a muscle relaxer until the results of your testing were complete. I believe they did the x-ray in place of the MRI, and I am unaware of the results. If you are scheduled to get the results, it would be free." (DSOF ¶ 52; Dkt. No. 81-2, Ex. B to DSOF at p. 14, Grievance # 39385, Medical Grievance dated 07/31/2012.)

On August 6, 2012, Foote submitted another medical grievance explaining that his "arm is still causing me discomfort and pain" and that his back hurt. (DSOF ¶ 53; Dkt. No. 81-2, Ex. B to DSOF at p. 12, Grievance # 41374, Medical Grievance dated 08/06/2012.) Lewis responded the next day, "I will schedule you for a visit, but I do believe your back issues are unrelated to the reason for follow up." (DSOF ¶ 54; Dkt. No. 81-2, Ex. B to DSOF at p. 12, Grievance # 41374, Medical Grievance dated 08/06/2012.)

On August 9, 2012, Foote was seen by Dr. Lee who noted no bicep pain but ordered an ultrasound of the left arm to rule out deep vein thrombosis, a C.T. scan if Foote was negative for deep vein thrombosis, and a muscle relaxer to be taken twice a day. (DSOF ¶ 55.) On August 23, 2012, Foote underwent an ultrasound at SwedishAmerican Hospital, which showed no evidence of acute or chronic deep vein thrombosis (DSOF ¶¶ 56, 57), and on September 27, 2012, Foote underwent a C.T. scan of his upper left extremity, which showed "no focal fluid collection or mass lesion identified. However there is presence of intramuscular dystrophic calcifications within the distal biceps muscle which may reflect previous trauma and involution of hematoma versus calcification from previous infection/inflammatory process" (DSOF ¶ 61 (quoting medical

10

records).) On October 5, 2012, Foote was prescribed Ibuprofen to be taken twice a day for six days. (DSOF ¶ 62.)

On November 13, 2012, Foote was treated by Dr. Kantayya, who noted that Foote's left bicep appeared slightly smaller than his right bicep, Foote had full range of motion of the elbow, and a slightly enlarged area on the medial aspect of his left forearm. (DSOF ¶ 74.) Dr. Kantayya ordered "no treatment now for calcified distal biceps – will continue to observe for spontaneous improvement." (DSOF ¶ 75.)

Foote subsequently brought this lawsuit under 42 U.S.C. § 1983, alleging that defendant Lewis denied him medical attention in violation of the Constitution and also intentionally inflicted emotional distress on him. (*See* Compl. at 21-23.) In particular, Foote alleges that Lewis ignored his requests for medical attention and refused to schedule him to meet with a doctor concerning the injury to his left bicep. (Compl. at 13.) As a result, Foote contends, his injuries remained untreated from May 10, 2012 to June 28, 2012. (Compl. at 13.) Lewis now moves for summary judgment in her favor and against Foote.

## II. ANALYSIS

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

After a properly supported motion for summary judgment is made, the party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (alteration and quotation marks omitted). That is, to survive summary judgment, the nonmoving party must go beyond the pleadings and "identify with reasonable particularity the evidence upon which [he] relies." *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007).

The court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The court considers the facts in a light most favorable to the non-movant. *Id.* Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *See Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772-73 (7th Cir. 2012); *see also Anderson*, 477 U.S. at 256-57.

Defendant Lewis moves for summary judgment on three grounds. First, Lewis argues that Foote failed to show that he suffered from an objectively serious medical condition. Second, Lewis argues that she was not deliberately indifferent to Foote's allegedly serious medical condition. Third, Lewis argues that her conduct was not extreme or outrageous and therefore she cannot be liable for intentional infliction of emotional distress.

### A. Plaintiff's Federal Claim

Jail officials violate an inmate's constitutional rights "when they display 'deliberate indifference to serious medical needs'" of the inmate. *See Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)); *Cnty. of Sacramento v.*

*Lewis*, 523 U.S. 833, 849-50 (1998) (explaining that deliberate indifference claims brought by pretrial detainees against jail personnel arise under the Fourteenth Amendment rather than the Eighth Amendment but are analyzed under the same standard). Jail officials may exhibit deliberate indifference to a known condition through inaction, *Gayton v. McCoy*, 593 F.3d 610, 623-24 (7th Cir. 2010); *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009), or by delaying necessary treatment and thus aggravating an injury or needlessly prolonging an inmate's pain, *Gomez v. Randle*, 680 F.3d 859, 865-66 (7th Cir. 2012). To prevail on a claim of deliberate indifference, a plaintiff must show both that he suffered from an objectively serious medical condition and that the defendant ignored a serious risk to the inmate's health. *See Greeno*, 414 F.3d at 653. Foote's claim against defendant Lewis fails on both prongs of the deliberate difference analysis.

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id.* Not all injuries or medical conditions, however, are sufficiently serious to support a claim for deliberate indifference. *See, e.g.*, *Pinkston v. Madry*, 440 F.3d 879, 891 (7th Cir. 2006) (split lip and swollen cheek do not constitute objectively serious medical conditions); *Davis v. Jones*, 936 F.2d 971, 972-73 (7th Cir. 1991) (scraped elbow and one-inch cut to temple not objectively serious).

The record contains no evidence showing that Foote suffered from an objectively serious medical condition. Instead, the nurse who examined Foote on the day following his alleged injury and again three days later recorded no visible signs of injury to Foote's left bicep. Likewise, Dr. Lee, who examined Foote approximately a month and a half after his injury noted

only a firm swelling at the front bend of Foote's elbow. Any problem with Foote's left arm was only diagnosed after two different types of imaging were performed on the arm and then only required treatment with Ibuprofen for six days. Foote presented no evidence establishing that his injury would have been obvious to a lay person, and his medical records reflect that the injury was not even obvious to medical professionals. The injury therefore was not sufficiently serious to support a claim of deliberate indifference.

The record also contains no evidence that Lewis ignored Foote's requests for medical treatment. Documents submitted by Lewis show that during the time period complained of by Foote—May 10, 2012 to June 28, 2012—Foote communicated with Lewis on three occasions concerning treatment of his left bicep. His first communication with Lewis occurred on May 17, 2012, in which he explained that he was experiencing pain and bruising in his left bicep as a result of a week-old injury. Lewis responded that Foote was scheduled to be seen at the clinic that day and told Foote to come to the clinic if he needed to be evaluated. The Jail's records, however, contain no entry showing that Foote visited the clinic on May 17, 2012, and Foote presented no evidence to the contrary. Lewis therefore cannot be held responsible for Foote's failure to receive medical attention on May 17, 2012. *See Pinkston*, 440 F.3d at 892 (finding no deliberate indifference where inmate refused offered medical care); *Blankenship v. Birch*, 590 F. App'x 629, 633 (7th Cir. 2014) (finding no deliberate indifference where prisoner chose not to receive treatment).

Foote next communicated with Lewis by electronic grievance on June 21, 2012 and June 22, 2012. At that time, Foote merely inquired whether Superintendent Tack had spoken to Lewis about having a doctor look at Foote's arm; he did not specifically request an appointment with the

14

doctor. Lewis—who was not a medical provider in this case but only responsible for scheduling Foote's medical care—responded within two to three hours of receipt of each grievance and ultimately advised, "You are scheduled for a clinic visit." Six days later, on June 28, 2012, Foote was seen by a doctor for assessment of his left arm. From that date on Foote received a steady course of diagnostic testing to determine what was wrong with his arm as well as prescriptions for muscle relaxers and Ibuprofen.

Given Lewis' prompt response to Foote's inquiries and his appointment with a doctor only six days later, it cannot be said that Lewis was deliberately indifferent to Foote's request for medical treatment. While Foote might not have received an appointment with a doctor as quickly as he would have liked, record evidence shows that Lewis acted appropriately after receiving Foote's June 21 and 22 grievances. Lewis therefore cannot be held liable for any delay in treatment of Foote's alleged injury. *See Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (finding no valid claim for six-day delay in treatment of infected cyst).

## B. Plaintiff's State-Law Claim

Only Foote's claim for intentional infliction of emotional distress remains against Lewis. The decision to exercise supplemental jurisdiction is within the district court's broad discretion, but "it is the well-established law of this circuit that the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly & Co.*, 193 F.3d 496, 501 (7th Cir. 1999); *see Howlett v. Hack*, __ F.3d __, 2015 WL 4433218, at *5 (7th Cir. July 21, 2015) (explaining that district court should relinquish jurisdiction over state-law claims when they have not been the focus of litigation).

15

Accordingly, Foote's claim for intentional infliction of emotional distress against Lewis is dismissed without prejudice to Foote pursuing the claim before an appropriate tribunal.

### III. CONCLUSION

For the foregoing reasons, defendant's motion for summary judgment [79] is granted and judgment is entered in favor of defendant Lewis on Foote's federal claims. Plaintiff's state-law claim is dismissed without prejudice. Because all claims against all defendants have now been resolved, this case is terminated.

If plaintiff wishes to appeal this judgment, he may file a notice of appeal in this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(1)(A). The court advises plaintiff that, if he chooses to appeal, he will be responsible for paying the $505 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Ill. Dep't of Corr.*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, plaintiff may accumulate a strike under 28 U.S.C. ' 1915(g).

Date: August 31, 2015